(85 South. 859)

LOUISVILLE & N. R. CO. v. BISHOP.
(8 Div. 650.)

(Court of Appeals of Alabama. Dec. 16, 1919. On Rehearing, Jan. 13, 1920.)

1. CARRIERS ☞184—COMPLAINT HELD TO ALLEGE BREACH OF DUTY IN ACTION FOR DELAY IN TRANSPORTATION OF CORPSE.

In parent's action against railroad for delay in transportation of the corpse of deceased child, allegation that by reason of defendant's negligence the corpse was not transferred to the next succeeding passenger train of the connecting carrier leaving the connecting point for the point of destination, as shown by the contract of carriage, *held* a sufficient allegation of a breach of duty.

2. CARRIERS ☞176 — CONNECTING CARRIER HELD NOT LIABLE FOR FAILURE TO STOP TRAIN FOR TRANSFER OF CORPSE.

Parent who had shipped corpse of deceased child under a through ticket requiring corpse to be transferred to connecting carrier at certain point could not recover for connecting carrier's failure to transfer corpse to train which did not stop or put off passengers or baggage at such point under its rules and regulations, promulgated by authority of the Interstate Commerce Commission.

3. CARRIERS ☞259—PURCHASER OF THROUGH TICKET CHARGEABLE WITH KNOWLEDGE OF RULES OF CONNECTING CARRIER.

Purchaser of through ticket is chargeable with knowledge of rules and regulations of connecting carrier, promulgated under the authority of the Interstate Commerce Commission.

4. APPEAL AND ERROR ☞1040(7)—SUSTAINING DEMURRERS HARMLESS WHERE DEFENSES AVAILABLE UNDER OTHER PLEAS.

The sustaining of demurrers to special pleas was harmless, where defendant had the benefit of the matter alleged therein under other pleas.

**5. Negligence ⬤119(7)—Contract Impos-ing Duty Must be Proved as Charged.**

In an action in case for negligent failure to perform a duty arising out of a contract, the contract from which the alleged duty arose must be pleaded and must be proven as charged.

**6. Judgment ⬤239—Affirmative Charge as to One Defendant and Refusal as to Other Held Error.**

In action in case jointly against initial and connecting carriers for negligent failure to transport corpse, action of court in granting affirmative charge at the request of one of the defendants and refusing it at the request of the other *held* error.

**7. Carriers ⬤185(2)—Evidence held Ad-missible in Action for Delay in Trans-portation of Corpse.**

In action against connecting carrier for failure to transfer corpse to next succeeding passenger train after arrival of corpse at connecting point, testimony that plaintiff boarded the train at the instance or direction of the flagman or conductor, and left the train upon discovery that the corpse was not on the train, *held* admissible.

**8. New Trial ⬤140(3)—Evidence held to Show Quotient Verdict.**

Evidence *held* to show that jury rendered a quotient verdict.

**9. New Trial ⬤52 — Quotient Verdict should be Set Aside.**

Quotient verdict should be set aside on motion for new trial.

On Rehearing.

**10. Appeal and Error ⬤833(5)—Applica-tion for Rehearing Stricken on Failure to File Briefs in Time.**

Application for rehearing will be stricken on failure of applicant to file brief within ten days after submission, as required by Supreme Court rules 13 (Code 1907, p. 1509, and 61 South. vii) and 38 (77 South. vii).

Appeal from Circuit Court, Morgan County; Robert C. Brickell, Judge.

Action by Billie J. Bishop against the Louisville & Nashville Railroad Company for damages for failure to promptly transport and deliver the body of his child. Judgment for the plaintiff, and the defendant appeals. Reversed and remanded.

Eyster & Eyster, of Albany, for appellant.

Damages must be minimized, and the judgment was excessive. 7 Ala. App. 547, 61 South. 482. The verdict was a quotient verdict, and should be set aside. 184 Ala. 244, 63 South. 549, 49 L. R. A. (N. S.) 415. The court erred in giving the charges requested by plaintiff. 200 Ala. 372, 76 South. 288; Hibbard's Case, 145 Ky. 818, 141 S. W. 397, 38 L. R. A. (N. S.) 432. Counsel discuss the other assignments of error, with argument, but without citation of authority.

James Jackson, of Tuscumbia, and E. W. Godbey, of Decatur, for appellee.

Counsel filed no brief on original submission, but filed one on rehearing, which being stricken, the same is not set out.

BRICKEN, P. J. Plaintiff's case is stated in two counts. The action is based upon the alleged delay in transporting the corpse of a child of appellee, who was plaintiff in the court below.

This suit was originally instituted against the appellant and the Southern Railway Company. The latter was eliminated by the affirmative charge given in its behalf by the court. There was a judgment against the appellant for $833, and from this judgment it has appealed to this court.

There are 100 assignments of error going to the rulings of the court upon the pleadings, upon the admission of evidence, upon the giving of charges requested in writing by the plaintiff, the refusal of charges requested in writing by the defendant, and overruling motion made by defendant for a new trial. In this opinion we shall not treat each of the assignments separately, but many of them may be treated collectively.

At the risk of extending this opinion to much length, but for a better understanding of the opinion, we set out the complaint, which is as follows:

"Count 1. Plaintiff claims of the defendants the sum of $2,900 for neglect in and about the shipment and transfer of the corpse of plaintiff's minor child, the transportation of which corpse under a through ticket from Sheffield, Ala., to Hanceville, Ala., they undertook on or about February 11, 1918; and plaintiff avers that on said date, and for a long time prior thereto, both the defendants have been common carriers of freight, passengers, and baggage, and accustomed to the transportation, as such carriers, of dead bodies, according to established regulations and substantially uniform methods; and plaintiff avers that he, on, to wit, said date, being at Sheffield, Ala., with the surviving members of his family, and having sustained a bereavement in the loss by death of his infant child, Lilis May Bishop, on or about said date, and being desirous of burying the body of said child in or near Hanceville, Ala., in the county of Cullman, on or near the line of railroad of the defendant Louisville & Nashville Railroad Company, did, on said day and date, purchase of the defendant Southern Railway Company, at Sheffield, Ala., through tickets from Sheffield, Ala., to said Hanceville, Ala., for himself, his wife, the dead body of his said child, and seven living children, by way of Decatur, Ala., the nearest and most practical route, and the one most usually traveled between said point of Sheffield and Hanceville, the said city of Decatur being located at the junction of the lines of the

two common carriers, and the line of the Southern Railway Company extending from Decatur, Ala., to Sheffield, Ala., and being the only line of railway directly connecting said two points; and plaintiff avers that the said Southern Railway Company accepted the corpse and honored the ticket therefor, as well as the tickets for the plaintiff and surviving members of his family as aforesaid, and transported them all to Decatur, Ala., where it became, and then was, the duty of both of said defendants to use due care and diligence in and about the prompt transfer of the remains of said deceased child from the line of said Southern Railway Company to the cars of the said Louisville & Nashville Railroad Company, and to use reasonable diligence to effect its transfer to the succeeding Louisville & Nashville train thereafter going from Decatur to Hanceville; but the plaintiff avers that the defendants so negligently and carelessly conducted themselves in and about the making of said transfer and shipment that the said corpse was not transferred to the succeeding passenger train of the Louisville & Nashville Railroad Company leaving Decatur, Ala., for Hanceville, Ala., next after the arrival at Decatur, Ala., of said corpse over the line of the Southern Railway Company; and plaintiff avers that after the said Southern Railway Company's train arrived at Decatur, Ala., with said corpse, there was reasonable time and opportunity for the defendants, by the exercise of reasonable diligence and prompt measures, to have effected the transfer of said corpse to the train of said Louisville & Nashville Railroad Company leaving Decatur, Ala., for Hanceville, Ala., next after such arrival; and plaintiff avers that the said two common carriers used the same depot and platform and baggage office and baggagemaster at Decatur, Ala., and at the particular point of transfer the same railway track or tracks, and that the Louisville & Nashville Railroad Company's train leaving Decatur, Ala., for Hanceville, Ala., next after the arrival of said Southern Railway Company's train with said remains, left somewhere after midnight of, to wit, the 12th day of February, 1918, or between midnight and 3 a. m. of said 12th; and the plaintiff avers that he and his family, after arriving at Decatur, Ala., by direction of depot porters, or flagmen, or brakemen of the defendants, or by the direction and at the instance of said porters, or brakemen, or flagmen, or other servants of the defendants, or one of the servants of the defendants, boarded the said Louisville & Nashville Railroad Company's train to be transported thence to Hanceville, Ala., for the funeral of said child, after the agents, conductor, brakeman, etc., of the said defendant had examined the tickets held by plaintiff, which he had purchased as aforesaid, for the transportation of himself and his said family and the remains of his departed offspring, and had observed his destination; that some one or more of them placed the plaintiff's valise or baggage upon said train, and that after embarking on such train, and after it began to move out on its trip to Hanceville, they discovered that the corpse had not been put on board, and by reason of such discovery and in order to be with said corpse, and realiz-

ing that the said remains, to accompany which was the sole object of their mournful journey, had been left behind by the negligence of some one intrusted with the performance of a duty in the premises, the consequences and extent of whose carelessness could not be reasonably foreseen, the plaintiff and his family were constrained to debark from said train after it had left the depot and premises in Decatur, Ala., in the darkness of the middle night, the plaintiff himself leaving said train at the next succeeding stop at the depot at Albany, Ala., it not being practicable for him to get his family off the train, which stopped but a short time there, or to get in communication with them, as they were scattered about through the train at that place; he suffered mental pain and anguish and much annoyance while getting in touch with the employés in control of said train, so that his family could likewise debark therefrom and be put off and given his protection for the remainder of the night, instead of getting off at the lonely depot at Hanceville, Ala., without accommodations or escort, at which place and in a mile of which depot there were but few houses and practically no place of entertainment at the time that they would reach there, and after so contriving by means of such acts to have them leave the train and then join him in Albany, Ala., after the said train had left the Albany, Ala., depot, he and they then journeyed back to the depot at Decatur, Ala., and took up their lonely vigil beside the remains of said departed child for the remainder of the weary night, and until they could, after several hours, get another train over said Louisville & Nashville Railroad to Hanceville, Ala.; the plaintiff avers that he was caused to suffer great pain and mental anguish by reason of the wrong and negligence of the defendants as aforesaid, and was put to great trouble, expense, and annoyance; and plaintiff avers that by reason of the wrongs and negligence aforesaid, and by reason of the anxiety of his wife and the all-night vigil imposed upon her thereby, she was made sick and remained sick a long time, whereby he lost her services for, to wit, four weeks, and was forced to lose and spend much of his time in waiting upon her and ministering to her wants, all to his damage as aforesaid.

"Count 2. Plaintiff claims of the defendants the like sum of $2,900 as damages for negligence in and about the shipment and transfer of the corpse of plaintiff's minor child, the transportation of which corpse, under a through ticket from Sheffield, Ala., to Hanceville, Ala., they undertook on or about February 11, 1918; and plaintiff avers that on said date, and for a long time prior thereto, both the defendants have been common carriers of freight, passengers, and baggage, and accustomed to the transportation, as such carriers, of dead bodies, according to established regulations and substantially uniform methods; and plaintiff avers that he, on, to wit, said date, being at Sheffield, Ala., with the surviving members of his family, and having sustained a bereavement in the loss by death of his infant child, Lilis May Bishop, on or about said date, and being desirous of burying the body of said child in or near Hanceville, Ala., in the county of Cull-

man, on or near the line of railroad of the defendants Louisville & Nashville Railroad Company, did on said day and date purchase of the defendant Southern Railway Company, at Sheffield, Ala., through ticket from Sheffield, Ala., to Hanceville, Ala., for himself, his wife, the dead body of his said child, and seven living children, by way of Decatur, Ala., the nearest and most practical route, and the one most. usually traveled between said points of Sheffield and Hanceville, the said city of Decatur being located at the junction of the said lines of the two said common carriers, and the line of the Southern Railway Company, extending from Decatur, Ala., to Sheffield, Ala., and being the only line of railway directly connecting said two points; and plaintiff avers that said Southern Railway Company accepted the corpse and honored the ticket therefor, as well as the tickets for the plaintiff and surviving members of his family as aforesaid, and transported them all to Decatur, Ala., where it became, and then was, the duty of both of said defendants to use due care and diligence in and about the prompt transfer of the remains of said deceased child from the line of the said Southern Railway Company to the cars of the said Louisville & Nashville Railroad Company, and to use reasonable diligence to effect its transfer to the succeeding Louisville & Nashville train thereafter going from Decatur to Hanceville; but the plaintiff avers that the defendants so negligently and carelessly conducted themselves in and about the making of said transfer and shipment that the said corpse was not transferred to the succeeding train of the Louisville & Nashville Railroad Company leaving Decatur, Ala., for Hanceville, Ala., next after the arrival at Decatur, Ala., of said corpse over the line of the Southern Railway Company, and plaintiff avers that after said Southern Railway Company's train arrived at Decatur, Ala., with said corpse, there was reasonable time and opportunity for the defendants, by the exercise of reasonable diligence and prompt measures, to have effected the transfer of said corpse to the train of the Louisville & Nashville Railroad Company, leaving Decatur, Ala., for Hanceville, Ala., next after such arrival, and plaintiff avers that the said two common carriers used the same depot and platform and baggage office and baggagemaster at Decatur, Ala., and at the particular point of transfer the same railway track or tracks, and that the Louisville & Nashville Railroad Company's train leaving Decatur, Ala., for Hanceville, Ala., next after the arrival of said Southern Railway Company's train with said remains, left somewhere after midnight of, to wit, the 12th day of February, 1918, or between midnight and 3 a. m. of said 12th, and the plaintiff avers that he and his family, after arriving at Decatur, Ala., boarded the said Louisville & Nashville Railroad Company's train to be transferred thence to Hanceville, Ala., for the funeral of said child, and after embarking on such train, and after it began to move on its trip to Hanceville, they discovered that the corpse had not been put on board, and by reason of such discovery, and in order to be with said corpse, they left the train after it had gone from Decatur, Ala., in the night, and thereupon returned to the depot at De-

catur, Ala., at or about 3 o'clock in the morning of the 12th of February, and remained at said depot near the remains of said child during the remainder of the night and until they could get another train over said Louisville & Nashville Railroad to Hanceville, Ala.; and the plaintiff avers that he was caused to suffer great pain and mental anguish by reason of the wrong and negligence of the defendants as aforesaid, and was put to great trouble and expense and inconvenience in this, that he immediately, at the very first stop of the train, left the same to see about the remains of his dead child, and was unable to get his family off the said train at said first stop, and after debarking from said train took steps to have his family leave the same at the next succeeding stop, which they did, and plaintiff avers that by reason of the wrongs and negligence aforesaid, and by reason of the anxiety of his wife and the all-night vigil imposed upon her thereby, she was made sick and remained sick a long time, whereby he lost her services for, to wit, four weeks, and was forced to lose and spend much of his time waiting upon her and ministering to her wants, all to his damage as aforesaid. Plaintiff avers that recovery is sought herein for but one wrong or injury, and that all the counts of the complaint relate to said cause of action, and only the sum of $2,900, in toto, is claimed."

It will be noted that the gravamen of the negligence charged is the failure to transfer the corpse to the next succeeding passenger train of the Louisville & Nashville Railroad Company, and is alleged as follows:

"But the plaintiff avers that the defendants so negligently and carelessly conducted themselves in and about the making of said transfer and shipment that the said corpse was not transferred to the succeeding passenger train of the Louisville & Nashville Railroad Company leaving Decatur, Ala., for Hanceville, Ala., next after the arrival at Decatur, Ala., of said corpse over the line of the Southern Railway."

[1-3] Under its contract of carriage, it was the duty of defendant to transport the corpse of plaintiff's child without delay, and when plaintiff by his complaint alleged that by reason of the negligence of defendant the corpse was not transferred to the next succeeding passenger train of the connecting carrier leaving the connecting point for the point of destination, as shown by the contract of carriage, it was a sufficient allegation of a breach of duty. If the "next succeeding train" passing that way did not stop or put off passengers or baggage at Hanceville, the point of destination under the contract, that fact was a matter of defense available under the general issue. If, under the rules and regulations of the defendant's road, promulgated under and by authority of the Interstate Commerce Commission (of which plaintiff is charged with knowledge [A. G. S. R. R. Co. v. Vermillion, 16 Ala. App. 229, 77 South. 67]), the train leaving the connecting point about 6:30 a. m. was the first train available

to plaintiff for the transport of the corpse of the child to Hanceville under his contract of carriage, that train was, to all intentions and purposes, the succeeding passenger train of the connecting carrier leaving Decatur for Hanceville. That other trains on defendant's road operating under its rules and regulations approved by the Interstate Commerce Commission passed through and destined to points beyond Hanceville at an earlier hour would not authorize a recovery, as no duty rested upon defendant to violate its rulings and regulations with reference to the running and operating of its trains in order to deliver the corpse at its destination at an earlier hour than contracted for; the contract being made subject to the rules and regulations of the Interstate Commerce Commission, of which plaintiff is charged with knowledge. Alabama Great Southern Railroad Co. v. Vermillion, 16 Ala. App. 229, 77 South. 67; L. & N. R. R. Co. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L..R. A. 1915E, 665.

The defendant interposed several special pleas numbered from 2 to 8. The court sustained demurrers to special pleas numbered 2, 3, 4, 5, 6, and 7, and the cause was tried upon the plea of the general issue and special plea numbered 8. This plea is as follows:

"Plea 8. Said body of plaintiff's son was shipped under a through baggage check from Sheffield, on Southern Railway, to Hanceville, on Louisville & Nashville Railroad, and changed cars and roads at Decatur; it was received by defendant's baggage agent at Decatur, who had charge of said body, until it was shipped out on the train of the defendant; that plaintiff did not notify said agent that he desired said body shipped on the first train out for Hanceville, and defendant did ship it about 6:30 a. m. on the first train leaving Decatur having a schedule to stop at Hanceville; that the train leaving Decatur between 12 and 1 o'clock a. m. was not scheduled to stop at Hanceville and did not stop there except to put off persons and their personal baggage having tickets for said station, but it did not unload baggage from said train that was shipped in the baggage car and duly checked, as was the body of plaintiff's child; that defendant did not maintain a night office and an agent at Hanceville for the purpose of receiving baggage, nor any other purpose. It was at nighttime and a no-agent office, through which defendant did not deposit baggage shipped in its baggage car and duly checked, as was the child of plaintiff."

[4] Conceding, without deciding, that there was error on the part of the lower court in sustaining demurrers of plaintiff to special pleas 2, 3, 4, 5, 6, and 7, defendant had the benefit of the matter alleged in said pleas under the pleas of the general issue and special plea No. 8. So if there was error in sustaining demurrers to such pleas, it was error without injury.

The judgment entry shows that no demurrers were filed to special plea No. 8. We have examined the testimony very carefully and are of the opinion that every material allegation of said plea was proven.

[5, 6] For another reason the defendant was entitled to the general affirmative charge. This action is in case for a negligent performance or a negligent failure to perform a duty arising out of a contract, whereby injury and damage is alleged to have resulted. In such a case the averment of the contract from which the alleged duty to plaintiff arose is made an essential averment of the complaint, and must be proven as charged or else there is a fatal variance between the allegation and the proof. Coal City Mining Co. v. Davis, 81 South. 358,[1] and authorities cited. The action in the instant case was grounded jointly against two defendants and based upon a negligent failure to perform a duty arising out of a contract. The court gave the general affirmative charge at the request of one of the defendants. If the court did not err in this, then it did err in refusing to give the general charge as requested by the appellant. Authorities supra. Having reached the conclusion that the defendant was entitled to the affirmative charge, it can serve no good purpose to discuss separately the rulings made by the lower court in giving and refusing special charges asked in writing by the parties.

It can serve no good purpose to treat separately the different assignments of error urged to the rulings of the court upon the admission of testimony. It was proper to allow evidence as to whether suit case was checked and was carried upon the first train. It may be that this testimony was not relevant at the time it was offered, but it was made relevant by subsequent testimony.

[7] The one issue in this case was as to whether the defendants were negligent, that is, whether they failed to transport the corpse without delay. The evidence should be confined to this issue. It was proper to allow evidence that plaintiff boarded the train at the instance or direction of the flagman or conductor and that plaintiff left the train after he discovered that the corpse was not on the train.

[8, 9] Assignments of error 80 to 95, inclusive, are based upon the ruling of the court in overruling defendant's motion for a new trial. We are of the opinion that the court erred in refusing to grant a new trial. From the evidence on this question it appears from the record that the jury rendered a quotient verdict, which was therefore not a true verdict and should have been set aside. On this motion John C. Eyster testified as follows:

"I was the attorney for the defendant during the trial of the case of Billie J. Bishop against the Louisville & Nashville Railroad Company, tried in this court on Monday and Tuesday of this week. The jury returned their

verdict. as I recollect it, on the morning of the 10th of September. After they had been discharged by the court and within four or five minutes. at least within that time, I went immediately to the jury room where they had been deliberating and saw upon the table several loose sheets of paper. The only paper on which there was any writing at all, as I recall. was this paper which I now introduce in evidence before the court, showing 12 different amounts added together, and the total divided by 12, giving a quotient of $833; the cents are not run out. I immediately picked it up and put it in my pocket and it has been in my possession ever since. I now offer it in evidence."

The paper offered in evidence was in words and figures as follows, to wit:

```
          250
          500
         1000
          800
          500
         1000
         1000
          750
         1000
         1200
         1000
         1000
         ----
  12)  10000  (833
          96
         ----
          40
          36
         ----
          40
          36
         ----
          )  4
         ----
  12)   12
```

This testimony was corroborated by another witness, one J. Tom Crawford, who was examined; he testified that he was a member of the jury who tried the case, and that the paper (above set out) was in his handwriting; that he wrote it as a member of the jury, and supposed he left the memorandum in the jury room on a table, etc. In our opinion this case falls squarely within the rule laid down by the Supreme Court in the case of International Agr. Corp. v. Abercrombie, 184 Ala. 244, 63 South. 549, 49 L. R. A. (N. S.) 415, as to what constitutes a quotient verdict.

For the errors above pointed out, the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.

### On Rehearing.

[10] The record in this case was originally filed in the office of the clerk of this court on May 15, 1919. On May 22, 1919, the case was passed to the call of the Seventh division, June 3, 1919. On June 3, 1919, certiorari was granted and case passed to call of Second division, or to June 19, 1919, on which date the cause was submitted on briefs. The opinion in this case was handed down on December 16, 1919, in which the judgment of the lower court was reversed and the cause remanded. No brief by appellee has ever been filed in this cause, as required by the rules of the Supreme Court, which rules govern the procedure in this court (Sup. Court rule 13 [Code 1907, p. 1509, 61 South. vii [2]]; Sup. Ct. rule 38 [77 South. vii]), and because of the failure of appellee to file brief within ten days after submission and to otherwise comply with said rules, the application for rehearing filed on December 31, 1919, by appellee is stricken and cannot be considered (Louisville & Nashville R. R. Co. v. Maggie J. Naugher, 203 Ala. 557, 84 South. 262).

Application for rehearing stricken.